We'll hear argument this morning in Case 15-423, Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co. Ms. Stetson. Mr. Chief Justice, and may it please the Court, the exceptionally low Bell v. Hood pleading standard, under which a plaintiff's claims will survive dismissal for lack of subject matter jurisdiction as long as they are not wholly insubstantial or frivolous, has no application in a Foreign Sovereign Immunities Act case. Subject matter jurisdiction bespeaks the Court's power to decide a case. And before a court in the United States may exercise that power over a foreign sovereign, it needs to decide that that sovereign is not entitled to immunity. Decide comes from Section 1602 of Title 28. That phrase, not entitled to immunity, comes from Section 1330. What that means in practice is what this Court has explained in Verlinden, which is that a court presented with a Foreign Sovereign Immunities Act claim against a sovereign must decide at the threshold of the litigation, must satisfy itself, that jurisdiction exists. Kennedy. I take it there will be instances, or there could be instances, in which the Court finds that there is jurisdiction, that there is no immunity, and then as the case develops in the fact-finding stage, say, you know, I've made a mistake, there's immunity here. That could happen. It could conceivably happen, Your Honor. It generally does not happen for a couple of reasons. The first is that immunity is, unless it is pressed by the sovereign at the beginning, it's considered to be waived. So in circumstances where a sovereign, for example, doesn't raise a factual challenge to jurisdiction. My hypothetical is it is raised, the judge rules against it, and especially in a case like this where there is, I think, a foreign subsidiary that's incorporated in domestic, domestically in Venezuela, and there might be questions of the extent of overlapping management and so forth. It seems to me that that might, if there is an initial finding of no immunity, the judge might, in the course of hearing the case on the merits, say, you know, really there's immunity here. That's possible. It's certainly possible. I think the more problematic issue is what happened here, though, which is that the D.C. Circuit concluded that. Scalia, This is the opposite, where they didn't do it. Kagan That's precisely right. The D.C. Circuit here concluded that because there might not be immunity, what it said was at this stage of the litigation, it was permitting the claims against the sovereign to go forward. Ginsburg What you have described sounds to me like a 12b-6 standard. That is, have you stated a claim that would entitle you to relief under this statute? So to the extent that I comprehend your position, it's there's no counterpart to 12b-1. There's no discrete 12b-1, 12b-6 standard. It's one and the same. It's the 12b-6 standard. Kagan Well, Justice Ginsburg, I'm not sure that this case blends those two standards in that way. Here's what I'd say. With respect to a 12b-1 motion to dismiss for lack of subject matter jurisdiction pursuant to the FSIA, what the Court is required to do, then, is to turn to what this Court has described as all of those substantive, detailed Federal standards that are essentially baked into the jurisdictional statute itself. So for purposes of establishing jurisdiction in an FSIA case, you certainly would bring, and we did bring, that motion under section 12b-1. But what you do, then, is not just to apply this loose Bell v. Hood standard. What you do is you apply the relevant substantive Federal standards that are included in those jurisdictional provisions. Now the question is how would that differ from a 12b-6 inquiry? It differs in a number of different respects, most importantly procedurally. With respect to a 12b-6 inquiry, of course, a sovereign who loses a 12b-6 challenge wouldn't be entitled to the immediate interlocutory appeal if the sovereign failed to adhere to it. Alito, I don't quite understand that. Why would that not be so? If this immunity is analogous, for example, to absolute immunity, a category of absolute immunity for a government official or qualified immunity for a government official, those are also immunities from suit. And therefore, under the collateral order doctrine, an adverse ruling could be appealed. True that as much as immunity is at stake, it could be appealed, but in a way that proves our point rather than the converse, which is if a right is so important that it is entitled to, the sovereign is entitled to take an immediate appeal, it should be tested with something other than the Bell v. Hood standard. But more than plainly the Bell v. Hood standard, the Bell v. Hood standard should be tested with something other than the Bell v. Hood standard, and then you can move to dismiss the complaint under 12b-6, and if you're unsuccessful, you could take an appeal under the collateral order doctrine. Why doesn't that serve your interests just as well, without producing some of the questions that the court would have to decide all sorts of questions, even if they are not contested by the parties? So two responses, Your Honor. The first is, with respect to that last point, the questions that the court has to decide are the questions that the sovereign asks it to decide. It is the sovereign's prerogative in an FSIA case to call either the factual or the legal predicates into question. But what is the basis for that? You may waive immunity, but is there a statutory provision that supports what you just said? Yes, section 1330. And what does it say? It says that a court must decide whether the sovereign is not entitled to immunity before jurisdiction can lie. And that's one of the curious things about this. Where does it say that in the text of the statute? In the last provision of section 1330a. Well, Ms. Kessler, I mean, the question here is, that seems right. The question is whether a sovereign is entitled to immunity. And I guess I would ask you to look at the statute and to try to explain to me your reading of the language in the statute. So the statute says, a foreign state shall not be immune in any case in which rights and property taken in violation of international law are in issue. Right? Now, it seems to me that you are reading this statute as if it said that a foreign state shall not be immune in any case in which rights and property have been taken in violation of international law. In other words, you are taking out the are in issue language and suggesting that the question at the threshold is whether the rights and property, in fact, have been taken rather than whether they are in dispute. Justice Kagan, I think the answer has to do with that phrase, are in issue, that you are focused on. For a right to be in issue, it actually has to be a right. And as we were explaining to the district court and the D.C. Circuit below, with respect to the parent company, who is a plaintiff in this case, that parent company possesses no right. The right is not in issue if no right exists. Kagan, what is left to be in issue if you have already decided that there is a right in property and that it has been taken in violation of international law? With respect to a claim against a sovereign under that particular expropriation provision, depending on the nature of the claim, if it's grounded in a common law claim, there could be other defenses that could be raised. But if it's grounded as this one was, which curiously just tracks the language of the jurisdictional statute, a taking in violation of international law, it is conceivable if you test kind of the very end of that hypothetical, that you could imagine a circumstance where the merits get bound up in the jurisdictional inquiry. The problem with the Respondent's position on that, though, is this Court has already explained that that is okay. Kagan, I'm just missing what and maybe I'm just missing it but it seems as a funny way of writing this. If you are right, if you are right, Congress should just have said, well, a foreign State shall not be immune in any case in which there is a right in property taken that has been taken in violation of international law. What is the R in issue language doing except to say that the inquiry is whether there is a dispute about whether there's a violation of international law? Kagan. Two things. The first is for there to be a dispute, there has to be a right and it has to have been taken in violation of international law. The problem with the Respondent's reading, and you can see this at pages 3 and again at 18 and again at 24 of their brief, they insert the word claim at issue, which of course the statute doesn't contain. Alito, would it be meaningful to say that when a Bivens action is filed with jurisdiction predicated on the arising under statute, a constitutional right is in issue? It would certainly be reasonable to say that in the abstract, but here's the problem with engaging too much on, I think, R in issue. We have explained why the right must presently be an issue. There must be a right. We've also explained why there has to be a taking in violation of international law. For purposes of expropriation, that is a particularly important phrase. The issue with reading Federal jurisdictional statutes, as this Court explained just last term in Manning, is that we're already, for the most part, past the point where we are hewing too closely to the text. We look at the dictates of reason and coherence and judicial policy. Alito, this is a curious argument for you to be raising, because your prime one, your lead argument, is that the text indisputably supports your position, is it not? Our lead argument certainly depends on the text, but my point is the text is not our only anchor. You just said we shouldn't pay that much attention to what the text says. Our text is not our only anchor, is my point. The anchor is, if you get to the point where we are having this intense discussion about in issue, and this has actually come up before in the Elahi case, there was a colloquy between the majority and the concurrence. And the concurring justice said it must be acknowledged that the words in issue don't lend themselves to an interpretation that might be infallible. So what you look at is the context from which that decision came. Breyer. How does it work with diversity? We have a complaint, Petitioner or Plaintiff, I'm from Kentucky. Plaintiff, my defendant is from Illinois. Okay? Filed. Response, hey, I'm not from Illinois, I'm from Kentucky, too. All right. How does the judge, what does the judge do? The judge in a diversity case will look outside the pleaning in that particular instance, take evidence as to whether the defendant is or is not from, I'm sorry, when? When? At the beginning, at the jurisdictional stage, under 12.1. Okay. And that's to determine if there is jurisdiction. Correct. And you're saying that should be the same here? I'm saying that it should be the same here, both with respect to the claim that we're bringing right now, which is to the legal sufficiency of the complaint. Did that parent company have a right? Was that Venezuelan subsidiary's company right taken in violation of international law? That sufficiency of the pleading jurisdictional challenge is quintessentially Your response to Justice Breyer suggests that it's not only a question of legal sufficiency, and I think that the government specifically says this in its brief, that you would also have a factual, any factual disputes addressed at that time. So if there are factual disputes, you know, there's a pleading, it is legally sufficient, but a defendant can come in and say, well, it might be legally sufficient, but the facts are just wrong. And you would have that at the jurisdictional stage, too, is that right? We would, indeed. And in fact, the way that this particular set of circumstances came about, the parties agreed that in order to avoid what might not be necessary, which was jurisdictional discovery, the parties would, these defendants, would front load the legal sufficiency questions before we get to them. So I'm just going to ask you, I'm sorry. Roberts, Justice Breyer. Breyer, well, I was thinking, I can't get my hands around this case or my mind around it, because it seems to me it's really about a practical matter. And the practical matter is when should the judge in this kind of case decide whether or not there really is a claim here, a legitimate claim they can win on that falls within the category, rather like diversity. And the answer is, if it's a foreign country and sovereignty is at issue, do it as soon as you can in an ordinary case. But if you have something special, maybe you can't. Judge, you run your own trial. But keep that in mind. We don't want to have foreign countries in our courts when there isn't really a pretty good case against them and maybe a winning case. So decide this thing quickly. Decide it up front. But to start talking about jurisdiction and these things I can't really understand as well as, say, Justice Ginsburg, who taught jurisdiction, and I mean, why are we in this? Why don't we just give them that practical advice? I think that the reason that the practical advice might not be enough is another response to a question that Justice Alito posed to me earlier, which is for purposes of the FSIA, there is a significant difference between a court exercising its power over a foreign sovereign, which is the nature of subject matter jurisdiction, and deciding whether it can exercise that power over a foreign sovereign. Ginsburg. Ginsburg. It does indeed. So for purposes of this, that means that the foreign sovereign can present itself to the court and can challenge, whether it's on the sufficiency of the pleadings or on the facts, can challenge the basis for that jurisdiction. And, yes, there will be circumstances where a sovereign comes in and makes legal challenges, such as we have made here, and factual challenges, such as might be made. Sotomayor, this feels a little bit like an academic exercise to me for the following reason. It appears to me, and you're going to have to correct me if I'm wrong, that on the district court said, and the court of appeals approved the finding, that there was a sufficient allegations of facts of State acclaim. So I don't think that that ruling depended on facts. It depended on a legal conclusion. Justice Sotomayor, that is correct in this respect. We decided, along with the Respondents, that we would back load any factual challenges to jurisdiction. So, for example, a typical factual challenge would be, you've attempted to sue me in U.S. court, I don't have a commercial nexus with the U.S. These challenges, though, and you can see this best in the D.C. Circuit's panel opinion, these challenges are challenges of law to the sufficiency of the pleadings. Does a parent company have a right in its subsidiary's property that it can allege here? Does a subsidiary, a Venezuelan company, have a property that was taken in violation of international law? What the D.C. Circuit concluded in those circumstances and what the words it used at Joint Appendix 183 were, at this stage, those pleadings were passable to get past the jurisdictional standard. Sotomayor, I'm sorry. What more do you want? Meaning, it seems as if you're asking us for an advisory opinion of what the court's next step should be with respect to what issues of discovery it should have on other legal issues, not on this one. Because it's already ruled that this complaint is sufficient as a matter of law, that this parent, under international law, I'm not even questioning whether it's right or wrong. I know you say it's wrong, and this is a serious issue of whether it's right or wrong. But are you asking us for an advisory opinion as to what the next steps are for the court below? No. Because we haven't granted cert on the legal question. I agree with that, Justice Sotomayor. I'm not asking for an advisory opinion at all. In fact, what you just said about not being sure whether it's right or wrong, that the parent company has a right, that's the problem. The problem is that when you are talking about jurisdiction in an FSIA case, you can't just decide that the plaintiff might have stated a jurisdictional predicate. You have to decide whether that right actually exists. So what the D.C. Circuit did here, applying that low Bell v. Hood standard, is to say there is no precedent that completely and inexorably forecloses the plaintiffs from bringing this particular claim. Ginsburg. It's a low Bell v. Hood standard, as far as I know, and I think the Red Roof bears this out. It's not just 1331. That's the general rule, that to get into court, just to get your toe in the door, all you have to do is you don't have to show that you have stated a claim at that point. You just have to meet the threshold jurisdictional standard. It's just very strange, putting together everything you said, what I come out with is, in order to have jurisdiction, you have to prevail on the merits, because you said if they're facts disputes, they get front and loaded, too. So everything is decided under the jurisdictional head. But, Justice Ginsburg, the solution when it comes to preserving that foreign sovereign's dignity is not to dilute the FSIA's jurisdictional standard. It is, if necessary, to make those merits determinations of the jurisdictional standard. Ginsburg.  The standard is. Ginsburg. Is it the standard that is not this peculiar to 1331? It is the general standard for how you determine whether you have you pass the 12B1 threshold. The standard is the standard that this Court articulated in Verlinden, which is that you look at the substantive jurisdictional standards that are in the FSIA and you decide whether or not they have been satisfied, not whether they may be satisfied, which is the Bell v. Hood frivolousness D.C. Circuit standard, but whether they have been satisfied. Was there a right? Was it taken in violation of international law? That is the difference between hypothesizing jurisdiction and actually deciding it. I would like to reserve my time if I could. Thank you, counsel. Ms. Goldenberg. Mr. Chief Justice, and may it please the Court. I would like to start by talking about the way that we read the text of this provision, because I think it's a little bit different than the way that Petitioners read it, but not in a way that changes the bottom line in this case. So the statute says rights and property taken in violation of international law are in issue. What has to be in issue there are rights in property. And as we know from this Court's decision in permanent mission, that means that at the jurisdictional stage you have to figure out whether the kind of right that's being asserted falls within the Federal law definition of rights and property within the FSIA.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. I think that taken in violation of international law is describing and defining the kind of property that you have to be talking about in this case. Kagan. Kagan.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. is decided at the jurisdictional stage, both law and fact. And if you are right that the question of whether that right in property has been taken in violation of international law is also decided, both law and fact, at the jurisdictional stage, then what is the issue, the in-issue, that's left for the merits? So I disagree with part of what you said. I do think that the question of whether property was taken in violation of international law is something that does have to be decided at the jurisdictional stage in law where there's a challenge like there is here, or in fact, if there's a factual challenge.  So I don't think you need to decide at the jurisdictional stage whether or not the plaintiff actually possesses the right that they claim. So, for instance, if you had a plaintiff who came in and said, I have a deed to this property and it was taken away from me, and the foreign state wanted to come back and say, no, you don't, this deed is a forgery, you never had any relationship to this property at all, that would be in issue and that would be something that could be decided at the merits. The rights in property question that has to be decided at the jurisdictional stage is the one that this Court decided in permanent mission, which is, is this right that's being asserted here something that falls within the definition of rights in property that the FSIA put forward? And so in permanent mission the question was, is this asserted lien right a right in property even though it's not a right to possession of the property or to ownership of the property. Kagan I guess I'm not understanding the distinction. Could you – in this case, what would be the first question that would be the threshold question as to a right in property, and what would be the question that would get diverted to the merits stage? In this case, I think the question mainly is the question about whether what's being asserted is a right in property. Here it's a question of whether a shareholder's rights in the company that they own shares in are something that are rights in the property of that subsidiary company, the company that the shareholder has some corporate ownership interest in. And that is a legal question that could be answered at the jurisdictional stage. And here we don't know the answer to that question because all the decisions are based on what's the question that would be answered at the merits stage? The question that would be answered at the merits stage, here I don't think there actually would be much dispute on the merits, but, for instance, in a case like this, you could have a dispute about whether the plaintiff was actually a shareholder or was not a shareholder. Or, as in the example I gave before, which I think would be the more common situation, whether the person actually had a deed to that property or whether they didn't have a deed to that property. So there's work. Breyer You're reinforcing – actually, I'm getting pushed the other way. I came in on your side. No, but I'm not – I swing back and forth. But this is what's really bothering me. It sounds, the more I hear you speak, that there isn't a good thing that we're going to write in this case. It isn't going to get everybody good and mixed up, because it reminds me of a case where we set a kind of order of battle, as first you have to decide the jurisdiction and then you decide this and that. And I've never received so much criticism from the district judges as for that case. Because they tell us that cases differ a lot, one from the other. Let us do what's practical in the circumstance. There are three kinds of issues that can come up. There's a set of facts. Those facts might be in dispute. If you find one way, there is the jurisdiction. If you find the other way, there isn't. There is a second kind of issue, that we take the facts as given. Do they in fact fall within the definition of this statute? And that can even exist in a diversity case. Somebody is from Guam or somebody, you know. That's the kind of – does it really fall within? Or is it just possible that it falls within Federal law, under – rising under diversity, or this? And then there is a third kind of case, are you so far out that it isn't even hopeful that you could get into the court on this? Now, if you take the third, which is where we are, you leave it up to the district judge to decide the other two when and if it's most suitable in the case. If you don't, I'm worried. But in that circumstance, you are asserting jurisdiction over a foreign state based on a non-frivolous allegation, and that is something that doesn't respect the foreign State's dignity. Breyer, in fact, asserting jurisdiction over somebody who is from Guam, because in fact, you would have to go into the birth conditions and all kinds of things. The judge wants to put that off for a while because of other things that might dispose of the case. Understood. But this is a special context in which there is a real dignitary harm to the foreign State if the courts of another country sit in judgment as to something that foreign State has done. And that's a particularly harmful thing. Roberts, how often is that a serious concern? I mean, I understand that the reason you're concerned is that you don't want a reciprocal burden imposed on the United States when it's hailed into court in a foreign country. But does it really make a difference to a foreign sovereign whether it litigates these issues under 12b-1 as opposed to 12b-6? It does make a difference to a foreign sovereign. For the reason that I gave, it makes a difference to the United States when we are sued in other courts, whether there's a dispute at the jurisdictional stage or whether there's a dispute later. But why is that? Why is that such a significant issue? Well, as I say, there is something that is a real affront to a foreign sovereign or can be an affront to a foreign sovereign if another court sits in judgment of something that a foreign sovereign has done. And I think that's particularly It's going to be sitting in judgment one way or another. It's just a question whether it's in the context of 12b-1 or 12b-6. I can't believe it makes a difference when the ambassador from whatever country calls home and says, well, I've got bad news. We're being sued in Federal court, but don't worry, it's only under 12b-1, not 12b-6. It does make a difference, and I think it's particularly sensitive with respect to the expropriation exception, actually. And that's why the taking in violation of international law is such a critical threshold issue that has to be decided at the jurisdictional stage. And that's because Is there a difference in expropriation and conversion? Well, I do think it's an important point that here the underlying cause of action could be conversion. If someone brought that kind of cause of action, which wouldn't overlap exactly with the jurisdictional determination here, you would still have to allege that jurisdictional prerequisites were met, the jurisdictional requirements of the statute. In an expropriation case, your say Can you tell us when the government arrived at this position? Because you know we have an amicus brief, people. Can you just finish? Expropriation is different because? Expropriation is different because this is a public act of a foreign sovereign taking its own territory with respect to property in its own territory. And that is something that in the normal course is going to be a matter for the courts in that territory to resolve. The very thing that makes it appropriate for the courts of another country to sit in judgment on that kind of act is that there has been a violation of international law. And then you look at the nexus requirements in the expropriation exception, and those show that the property has some connection to the United States, which makes it appropriate for United States courts to sit in judgment. And there actually have been real problems, real sensitivities, real foreign relations concerns that have been raised in this area stemming from the D.C. Circuit's 2008 decision in the Chabad case, which is where the D.C. Circuit first announced the rule that we are considering here. That's an expropriation case against Russia. The D.C. Circuit decided there was a non-frivolous allegation that the property had been taken in violation of international law. At that point, Russia, feeling that it was immune and it hadn't gotten a full determination of its immunity, dropped out of the case, and the district court started imposing sanctions of $50,000 a day. In response, Russia initiated an expropriation action against us in Moscow and started imposing $50,000 a day sanctions on the United States. So that could have been something like that, could conceivably happen, even under the standard that we are talking about, that a foreign state could take offense. But this is a very sensitive issue, and there are real concerns here. Ginsburg, in your jurisdiction, in the case of Bank Marchesi, when the Court issued its decision in that case, Iran filed a suit against the United States in the World Court. There are real reciprocity concerns in this area, and I think Congress was cognizant of those. That's part of the purposes of the FSIA, and so that is the reason why the taking in violation of international law, the words in issue don't apply to that. It doesn't say whether it is in issue that the property was taken in violation of international law. The question is what the question is. Ginsburg, I read the dark green brief. It states a strong case in opposition to the position you are presenting by people who were once part of the government. So I would like to know when the position that you are now taking, when did that become the government's position? I don't know that I can specify a date, but I think it has always been the government's position and the State Department's position that the actual requirements of the exceptions to immunity need to be satisfied at the threshold, as this Court said in Verlinden, otherwise the grant of immunity becomes much less meaningful to the foreign State. Sotomayor, are you arguing what's important, a 12b-6 standard, or are you in agreement with the Petitioner that all of the factual disputes have to be decided? You seem to be saying no to the second. The factual disputes with respect to whether the property has been taken in violation of international law. If there are any, and if the foreign State chooses to raise those factual disputes, do need to be decided so that you can figure out whether you have the right kind of property in the case. Thank you, counsel. Ms. Carroll. Mr. Chief Justice, and may it please the Court. The jurisdictional test under the expropriation exception turns on what is, quote, in issue in the suit. In other words, what is the dispute about? That language contrasts starkly with language that Congress used in an analogous provision of the FSIA, section 1610a3. And, Justice Kagan, this goes to your earlier discussion regarding the meaning of in issue. Section 1610a3, which is reprinted at page 28 of the addendum to the blue brief, section 1610 is the section that governs immunity from attachment and execution, and it includes a provision for expropriation cases. That language says there's immunity that there's an exception to immunity where there's been a judgment, quote, establishing that rights and property, quote, has been taken in violation of international law. So when Congress wanted to make the fact of a taking in violation of international law a jurisdictional fact that must be resolved at the outset, it knew how to say that, and it used those words in 1610. It's your point that that's not the outset. That's a question of execution of a judgment that's already been in place. But if the point of the proceedings. The issue we're talking about here is sort of the commencement of litigation. That's correct, and Congress used very different language in 1605a3. Are you saying that immunity issues are not generally jurisdictional? No, we are saying the opposite. The issues generally are jurisdictional, are they not? Exactly. The subject matter of the court turns on the immunity standard. They are one and the same standard, and that's why all of the court's body of jurisprudence on what does it mean for a court to have jurisdiction over a particular subject matter are relevant here in this case. To be sure, there are some kinds of jurisdictional inquiries, such as citizenship of the parties in a diversity case, for example, where the facts have to be established at the outset. And you say that for the commercial nexus, is that right? Exactly. The commercial nexus or whether it's the difference. The difference here is that other kinds of jurisdictional provisions don't require the establishment of a fact. They simply require that the plaintiff has asserted a particular type of claim. We think the language. In other words, you're saying the commercial nexus language, you have to establish the fact early on. You have to, yes. That's a jurisdictional phrase because of the way that's written in the statute. Correct. Because it doesn't have this in-issue language. That's correct. And I want to be very clear. There was a reference earlier that our position suggests that a court has to decide whether there might or might not be immunity. We don't think that's correct, and that's not the position we've asserted. The court certainly does must assure itself at the outset that an exception applies. The question is, what is the standard that defines the scope of immunity? Right. And the other statutes you're talking about and the ones set forth in your red brief just seem to me to avoid the question, which is whether there's a different approach in foreign sovereign immunity. Our ambassadors have to go to these other countries and say, or their ambassadors, you're being sued. You have to come into our courts, even though you're a sovereign, and we don't want you dragging us into your courts. But you have to come in our courts because someone has raised a claim that is not wholly insubstantial or frivolous. That's a very low standard in that context. Mr. Chief Justice, the Petitioners and the government have cited no other sovereign immunity context in which the standard they're proposing applies. To the contrary, as we noted in our brief, in suits under the Tucker Act, Belle v. Hood is the applicable standard. The Petitioners cited Land v. Dollar in their reply brief. Just two years after that decision in the Larson case, this Court held that jurisdiction So you're talking about the United States sovereign immunity? Yes. In United States courts. Exactly. Where the Court held that Belle v. Hood was the applicable standard. So the question is, why in this one particular area alone would Congress have written a standard that departs from how jurisdictional inquiries are determined in every other context, including other sovereign immunity? Because there's extreme sensitivity with reference to suing foreign sovereigns. Well, I appreciate that question, because I think it calls out the implications of the position being advanced by Petitioners and the United States. Because of the mini-trial that it requires at the outset on the question whether this sovereign has violated international law, under their view, if, as is the case here, the defendants are asserting other merits-based legal defenses to the claim, for example, a defense under the act-of-state doctrine, the Court cannot get to those defenses until it has decided whether there's been a taking in violation of international law. The implications of that are, I think, speak for themselves. When a court has to say, first, I have to decide, has there been a taking in violation of international law, I think, yes, this sovereign has violated international law. Now I have jurisdiction to consider whether under the act-of-state doctrine, it's not appropriate for me to inquire into the validity of the foreign sovereign's actions. That makes no sense under our view and under the application of Belle v. Hood in any other jurisdictional context. The sovereign defendant doesn't have jurisdiction to consider whether under the act-of-  sovereign's actions. Roberts, I'm sorry, why does that make no sense? I mean, you establish jurisdiction, and there's an additional defense, other than that there's no jurisdiction. I don't see why. Well, from the perspective of protecting the dignity and comity of the foreign defendant, if the claim holds up, a violator of international law, before it can consider any other defenses that might not require that determination, I think, is not consonant with a view that protects the dignity of the sovereign defendant. That's why we're going to look at it. Kagan, so I have a good deal of sympathy with the way you read the language, but it does seem to me that it gets you into one big problem. So, you know, take a case where there is an arguable claim that there's been a violation of international law, so you would satisfy the Belle v. Hood standard, but then the actual claim that's being made is just a straight conversion claim. So you've gotten to the merits, but in the merits stage, all you're talking about is this conversion claim, and so you could be adjudicated guilty even though nobody has decided, in fact, whether you violated international law, and that seems as though it cannot be right. Well, I think it probably can't be right, but the reason that it's not right has nothing to do with whether Belle applies. Under our view of this statute, Congress and the executive were reacting to a very specific set of problems, and they adopted a very specific solution. They were looking at the Cuban expropriations and other notorious expropriations of property that were affecting U.S. interests, where sovereigns were using those expropriations to gain an unfair advantage in the commercial marketplace, and they wrote a statute that said, we want the courthouse doors to be open to those kinds of claims. A claim of a taking in violation of international law or a tort claim, the Grabhaman of which is an assertion that the defendant violated international law or the defendant's title is no good because the property was taken in violation of international law. All those are within the scope, but you can't do that. So a claim that does not actually press a claim of seeking a remedy for a taking in violation of international law, we think should not be brought under this statute. This is not the tort exception. I see. So you think that's necessarily a merits issue? We do, whereas I understand the Petitioner's and the government's position to be that this is simply a jurisdictional fact. So long as the plaintiff can show that this property was taken at some point by someone from someone in violation of international law, that opens the door to any kind of claim at all, so long as it somehow implicates. Breyer. I don't know that that's a different issue, I think. Suppose in a diversity case, A says I'm from Kentucky, B says, and he says B is from Illinois, B files an answer, no, I'm from Kentucky, no diversity. Doesn't the judge normally make that determination right then and there? Yes, with respect to. Well, then why should it be any different here? Because this is not a jurisdictional fact like the citizenship of the parties. It's a statute. But, I mean, the reason that you do make that right at the beginning, I have always thought, was not a mystical thing, because you don't want to haul somebody across the country in different places when there isn't even diversity jurisdiction. Here, though, the reasoning isn't quite the same. They say, try it out at the beginning, whether there is at least a claim here, a real claim, that they did seize the violation. They did seize the property in violation of international law. That way, we don't bring China or someplace all the way over to the United States and cause all kinds of problems without there really being something. So do it at the beginning, Judge. Don't wait until the end of the case. Justice Breyer, Rule 12b-6 exists for precisely that purpose, and nothing would have prevented these defendants from proceeding on a motion. Okay. So what difference does it make? And here I'm not asking an argumentative question I don't know. What difference does it make whether you move under 12b-6 or move under 12b-1? I think probably the only significant difference it makes is the difference that Justice Alito referred to earlier, which is the implications of taking merits issues and calling them jurisdictional. And those implications are at least among the following. Number one, the arguments can't be waived. Ms. Stetson is relying on a version of the waiver doctrine that, although we as plaintiffs in an FSIA case might be happy with, is not how courts have applied it and not how they have asserted it below. If the sovereign is asserting its immunity, then the court cannot find that immunity has been waived. It must find jurisdiction under another provision. Breyer, can we say that? Can we just say? Can we say, look, I guess we couldn't, but I don't care whether it's 12b-1 or 12b-6. Judge, what you ought to do in such a case is try out right at the beginning of the case, if it's at all possible, whether you have a basis here, the plaintiff for getting this foreign country into our court. But the consequence of calling it 12b-1 is that it is treated as a subject matter jurisdiction question. That means serial interlocutory appeals over every new statutory theory, even if we're just looking at legal sufficiency, defendants can serially raise new statutory arguments and then go up and down. Sotomayor, let's go back to Justice Alito's question. Why I'm confused by this case is I think both the State Department and your adversary are upset that the Court found that there was a viable legal argument that a parent could have property interests in the possessions of a subsidiary. Is that your understanding? With respect to the motivations of why they're upset, but with respect to what the dispute is in the case, what their legal challenge is to the parent's claim, is not about the character of the rights as rights in property. The arguments that were made and decided below were the following. The defendants contended that the only property that was taken was property belonging to the subsidiary. The parent doesn't have standing to assert those rights. The parent does have its own rights. For example, they own shares in the subsidiary. Their position was not that those rights are not property rights, but that those rights were not taken. So there was no dispute about whether those rights at issue are, quote, unquote, property rights. The dispute is, do these two plaintiffs, can they proceed to bring a claim of a violation of international law as a result of the uncompensated discriminatory taking of their property? That is a merits question. And the Court has made clear that in jurisdictional statutes that turn on the nature of the claim rather than a factual showing, Belle v. Hood is the governing standard across those contexts, even when sovereign immunity as an issue is true. Alito Related to that, what do you think you would have to prove? That property was taken on the merits, property was taken in violation of a customary international law standard, or that having established that as the jurisdictional predicate, that there was a conversion under the law of whatever jurisdiction is chosen? Our claim is a claim for a taking in violation of international law, which has long recognized that expropriations must be compensated, they must be for a public purpose, and they cannot be arbitrary and discriminatory. Those are well-established principles of international law. Roberts Property of a domestic citizen? Our argument on that issue is that the Venezuelan incorporation of the subsidiary does not bar the claim in a situation where the foreign sovereign itself deemed that subsidiary to be a foreign company, treated it that way, and took its property on that purpose. The court of appeals looked closely at that issue. It said, the only cases we can find, there aren't very many, but the ones that are out there, support this claim. The restatement and other commentaries support this claim. And Petitioners, quote, have cited no other contrary authority that forecloses the claim. They took a close look at it. If Petitioners wanted to proceed right away to a 12b-6 determination, they could have chosen to do that. Instead, they wanted to do that. Roberts It took a close look at it. I thought it was under the Belle v. Hood standard. They did apply a Belle v. Hood, but I would submit that the analysis that the court adopted, I think going back to Justice Sotomayor's earlier observation, was a fairly robust determination. And then we did say, I forgot the name of the case, that if there's a 12b-1 question and a 12b-6 and you think the 12b-6 is easy, you still have to decide the 12b-1 first. So you can't substitute the 12b-6. Has the claim been stated for 12b-1? You have to have the jurisdiction decided first. Anderson That's the holding of Your Honor's opinions for the Court in Sinochem and Ruergas following up on Stiegelko. And what those cases recognize fundamentally is that determining the legal sufficiency of allegations, even forgetting resolving factual disputes, which Ms. Goldenberg and Ms. Stetson both conceded would have to be resolved at the threshold, but this Court has said resolving those kinds of claims, even limited to legal sufficiency, is itself an exercise of jurisdiction. In the Court's words, it's vital to establish jurisdiction first before getting to those issues. Kagan And if I could go back to Justice Breyer's question, and I hate to ask you to repeat yourself, but if I could understand your view of why it matters, is one, 12b-1 motions, it's not clear whether one can waive defenses, and what else? Anderson So there's the waiver issue, which is the sort of the opportunity for the defendants to continually come up with new theories, which has occurred in this case when we went back down to the district court on remand for the district court. New jurisdictional arguments were made at that time that hadn't been made previously. There's the Court's obligation to consider issues sua sponte. This goes to the Court's subject matter jurisdiction, and as the Court observed in Verlinden, when there has not been a waiver of sovereign immunity, the Court must assure itself that one of the other exceptions applies. And to do that when there are arguments that have been made by the sovereign or even when there are just doubts in the case, the Court must resolve those because it goes to subject matter jurisdiction. All of those issues then become the subject potentially of interlocutory appeal. And so you end up with a system where these issues are raised, legal issues going to the merits, but the whole ball of wax is now being put into the jurisdictional determination going up and down, back and forth between the district court and the circuit. I really am not sure how that serves a sovereign's interests when it means that all of that has to be done before we can get to the straightforward legal merits determinations that the Court could decide once it concludes that it has jurisdiction. And I suspect it's for that reason that when Congress wrote this language, even though the Belle v. Hood standard had been long established far before the FSIA was written, Congress didn't write anything in this statute to suggest we want this one kind of jurisdiction to be done in a way that differs from how any other kind of jurisdictional determination of this type is made. Kennedy, Well, it's always a little difficult for one party to tell the other party it doesn't really know its best interests, which is what you're saying. And the — but isn't part of it is that Venezuela said we don't want to be labeled as a violator of international law? I'm sure that they don't. I'm tempted to say a lot of things in response to that, but I think the most straightforward response is that the Belle v. Hood standard is the one that I think is best addressed to that concern, because rather than requiring the full-up adjudication of this defendant's status as a violator of international law, it simply applies the same jurisdictional determinations that apply in suits against the United States under the Tucker Act and says, now that we've assured ourself of jurisdiction, what 12b-6 arguments would the defendant like to make? Sotomayor, What discovery would you need if they brought this as a 12b-6, if they came in and said there is no customary international property right of a parent to have in a subsidiary's property? What discovery would you be entitled to if they took — if they brought a 12b-6 motion? So I want to be clear about the discovery necessary under the commercial nexus requirements and the discovery necessary to show a violation of international law. I'm asking a different question. What discovery would you seek or would you be entitled to have on what disputed issues of fact to determine the legal question? Well, the defendants have never moved under Rule 12b-6, so I'm not sure what arguments specifically they would make. If they were making factual arguments, would you? It's the one that they proposed to the district court, which was whether HMPIDC has standing to assert a taking in violation of international law on the issue of Venezuela's expropriation of HPV's property. So that argument was framed as a legal argument. I don't know that it would require any discovery at all. That's why deciding jurisdiction and proceeding to 12b-6, I think, you know, again, at risk of saying what's good for the other side, I think would serve the comity interest that's being asserted here, as opposed to a situation where, let's say you have an expropriation complaint, and maybe the facts of the case are that there was a payment of some compensation, but the question is whether it was adequate compensation as international law requires. And maybe even just on the face of the pleadings, or maybe the defendant puts in a factual dispute on that score, what that requires, then, is that the court has to have essentially a mini-trial on what is the valuation of this property, what's its going concern value under the discounted cash flow model, what was the value of the compensation provided, is that adequate. All of that has to be decided up front, with the end result being either under Petitioner's view, with the end result being either I have no jurisdiction, even though I just conducted this whole trial, or I have jurisdiction, but it's jurisdiction only to rule for the plaintiff. A court under this position, under their position, can never find that it has jurisdiction to issue a merits defense, a merits decision in the defendant's favor. That is an unusual jurisdictional rule, and it's not consistent with how Congress and the executive branch, when they were looking at these sorts of situations, and wanting to provide an open door, to say we're not opening the courthouse door only to winning claims. They're saying there has been a problem of foreign sovereigns taking property for discriminatory reasons or without paying for it, using that property to gain advantage in the marketplace, and we want the courthouse doors to be open to that. There's no indication in the text, in the structure, or anywhere that says that's supposed to depart from how these decisions are normally made. Now, I want to address the permanent mission case, which Ms. Goldenberg adverted to, where she, I think, correctly acknowledged that the only issue in that case was the character of the rights in issue as, quote, unquote, property. There was no issue in that case about whether the plaintiff's claim had any merit to it. The defendants in that case had argued, among other things, that they weren't obligated to pay the tax, and the Court said, no, we don't address merits questions. The Court did consider the character of the rights asserted as rights in property, but because that didn't implicate the merits of the claim, the Court had no occasion to consider whether Belle v. Hood applied. And as I mentioned earlier, there is no similar dispute here in this case, because there's not really any dispute about the fact that the parent owns shares, that those are property rights, and that the allegation is that the entire value and benefit of that property interest has been completely destroyed by the defendant's conduct. So permanent mission simply doesn't speak to any of those issues. Ginsburg. What about Verlinden? They cite that many times. They do, and I am happy for it, because I think Verlinden supports our position. Verlinden describes the FSIA correctly as a comprehensive substantive regulation of the amenability of foreign sovereigns to suit in U.S. courts. It sets out venue provisions, service of process rules, limitations on damages, rules about attachment of property, and so on. It also imposes substantive provisions requiring a connection between the conduct and the United States. That's how the personal jurisdiction elements work. And it also, in this Court's words, include provisions, quote, governing the types of actions for which foreign sovereigns may be sued and held liable in U.S. courts. That's exactly what we think is the right reading of this provision, which is it's a provision that says if an expropriation and its legality under international law are what's at issue, that's what the suit is about, and if the commercial nexus, that's decided at what stage, 12b-1 or 12b-6? We believe that has to be decided at 12b-1, because it is a factual requirement, just as, for example, a waiver requirement. But it's not unusual to have a jurisdictional provision that combines the terms of the   diversity statute is one, you know, where the citizenship of the parties has to be established, and if there's doubt about it or a dispute about it, the court must decide at 12b-1. But, for example, the amount in controversy need not be fully resolved at the outset. Roberts, Well, that's really all we're talking about here, and whether the issues set forth in the statute are ones that should be decided at the early stage or not. And whether it's there's a commercial nexus, you just say, well, that's just part of the jurisdictional provision, so it has to be decided at 12b-1. I don't understand why that answer doesn't apply in this case as well. To be clear, they are all jurisdictional requirements, and they must all be decided up front. The question is, what is the nature of the requirement? In this language about what's in issue, is a right on property, is a taking in violation of international law in issue, that is the type of jurisdictional requirement that is not a factual requirement in the sense of citizenship of the parties. It's more like the jurisdictional provisions that this Court has considered under the Sherman Act or the Exchange Act, which grants jurisdiction over violations or the criminal laws, which grant jurisdiction over offenses. Alitoso, does the issue of diversity or the issue of commercial nexus overlap with the merits of those claims? No, they don't, and that's another distinction between that kind of jurisdictional requirement and the kind of requirement that simply goes to, what have you put in issue? What's the case about? Roberts, what if there's a dispute about the shareholder status of the rights in property issue? There may be rights in property, but we think you own only 49 percent of the shares. And the plaintiffs say, no, no, they own 51 percent, so they have a right in property. That's a factual dispute that is decided where? That is a factual dispute that would be part of the merit. If the point of the argument was, because of the amount of shares you own, which of course is not an issue here because the parent is the sole shareholder. But if the argument is, because of the amount of shares you own, you don't own enough to be able to succeed and be entitled to relief on the claim that you've alleged, that's a merits determination. Well, but it's or it's a jurisdictional determination because you only have jurisdiction if you have rights in property. And you'd only have rights in property if you own 51 percent instead of 49 percent. Why isn't that like somebody coming in and saying, I'm not a citizen of Kentucky? Because the statute doesn't say you must show that you have rights in property. It says that you must show that rights in property are an issue in the suit. What's the suit about? It's about an assertion by the plaintiff that their rights in property were taken in violation of international law. The argument that Petitioners made, are making now, is not a new one. It's an argument that was made to this Court in the Binder Up case under the Sherman Act in the 1920s. It's an argument that was made to this Court in Belle v. Hood in the 1940s. It's the same argument, Justice Ginsburg, that's been made in the whole Steele Co. line of cases. And consistently, the Court has recognized that jurisdiction is vital before a court can decide that type of issue. Breyer. In your view, and the Chief Justice is hypothetical, your view is they'd move under 12b-6 right away and they would say you aren't entitled to relief because you only own 49 percent. Right. And nothing would have stopped them from doing that. Well, except that a lot of district judges don't like moving under 12b-6 right away. They like to have further development before they decide whether there's a claim or not. I'm — I can't say that that's been an issue in this case where there's been a fair amount of agreement among the parties in the courts as to what order the issue should be decided in. The Petitioners here have asserted a challenge, a factual challenge to jurisdiction under the commercial nexus requirements. They said even though Pena-Vesa is named as the expropriating entity in the decree and even though Pena-Vesa P initiated the eminent domain proceedings, nonetheless, we assert as a factual matter that actually we've shifted ownership and control of the property to some other Pena-Vesa entity, and that entity doesn't engage in commercial activity in the United States, and so therefore there's no jurisdiction. And as a matter of fairness, of course, we're entitled to examine the factual basis of that assertion. That's the only discovery that has gone on so far in the case, and it happened because the Petitioners chose to make that factual argument. They didn't have to. They could have just said, we think we have a great legal argument on the merits, and so we're going to move under 12b-6 to dismiss the action for failure to state a claim. They have never brought that claim to this day. There is no pending motion to dismiss for any of the grounds that they have asserted for failure to state a claim, only under 12b-1. And, of course, the Rule 12b, the office of Rule 12b-1 is very different from the office of Rule 12b-6. 12b-1 implicates all of the concerns of shoving merits issues into the determination, and for that reason we think there's no reason to construe this language to have that consequence. Roberts. Thank you, counsel. Ms. Stetson, you have a minute. Ms. Carroll describes this case as a subject matter jurisdiction case like any other. What this Court has already said in Altman is that the FSIA is sui generis. Here, subject matter jurisdiction isn't just about jurisdiction over a class of cases or a type of case. It's jurisdiction over this sovereign standing in front of the court. That is the difference between 12b-1 and 12b-6. 12b-6 requires that court to have taken jurisdiction, to have exercised its power over that sovereign. Before that happens, it is the sovereign's prerogative to test jurisdiction. In answer, Justice Breyer, to your order of battle question, the sovereign sets the order of battle. This is the only order that this Court needs to give is the one that it already gave, frankly, in Verlinden, which is courts apply the substantive, detailed FSIA standards to determine jurisdiction, not just to hypothesize it. The difference between this case and the Tucker Act is that in the Tucker Act, the jurisdiction depends on a claim against the United States. That's the language that's missing here. And in both the Tucker Act and in this case, there is, of course, an immediate appeal. The reason that an immediate appeal is tolerated under Section 1291, that narrow class of cases where that qualifies, is because this right is so important that it cannot be left for later. That's the difference. Roberts. Thank you, counsel. The case is submitted.